**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA , <br><br> Plaintiff, <br><br> v. <br><br> BRANDON BANNICK, <br><br> Defendant. | 1:20-CR-00238 -JLT-SKO <br><br> ORDER DENYING DEFENDANT BRANDON BANNICK'S MOTIONS TO SUPPRESS CELL PHONE DATA <br><br> (Docs. 1450, 1451) |

## I.     INTRODUCTION

Mr. Bannick has filed two motions to suppress evidence extracted from a cell phone (number 310-261-1091) associated with him. First, he seeks suppression of data obtained from that cell phone's service provider through a search warrant authorized March 18, 2022. (Doc. 1450.) He argues that warrant lacked probable cause because it was premised upon information from an anonymous tip whose reliability was not demonstrated. (*Id*.) The government opposes this motion, pointing to various pieces of corroborating information contained within the warrant affidavit to support probable cause. In the alternative, the government argues that even if the anonymous tip was not sufficiently corroborated, the warrant was facially valid and provided a good faith basis for investigators to execute the warrant. (Doc. 1536.)

Second, Mr. Bannick seeks suppression of all evidence extracted from the physical cell

1

phone associated with that number, which was ultimately seized from his property at the Los Angeles County Sheriff's Department Men's Central Jail pursuant to a separate warrant authorized May 26, 2022. (Doc. 1452.) At the time the motion was filed, the Defense represented that the May 26, 2022 warrant and resulting cell phone extraction had not been produced in discovery. (*Id*.) In opposition, the government indicates that it recently produced the warrant authorizing that search and previously (in June 2023) produced the resulting cell phone extraction at BASH_17786 through 17799. (Doc. 1538 at 2.) In addition, the government maintains that the May 26, 2022 warrant was supported by probable cause and/or that investigators' relied on the warrant in good faith. (*Id*. at 5–9.)

## II.   BACKGROUND

Mr. Bannick is charged with one count of conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d) (Count One), and four counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959 (a)(1) (Counts Two, Three, Five, Six). Two of the murder counts (Five and Six) stem from the shooting deaths of Ronald Ennis and James Yagle on March 8, 2022, in Pomona, California.

On March 9, 2022, officers responded to a report of a "man down" in the vicinity of Ridgeway Street and Mount Vernon Avenue in Pomona, California. (Doc. 1450, Ex. 1 at 4.) Two bodies were discovered nearby, one in the roadway and another in a grassy area. (*Id*.) The victims were identified as James Yagle and Ronald Ennis. (*See id*.) Investigators later learned the decedents were both members of the "Public Enemy Number 1" white supremacist gang and had extensive criminal histories. (*Id*.)

On March 12, 2022, Crime Stoppers received an anonymous tip indicating the suspect involved in the murders of Yagle and Ennis was Brandon Bannick, a white male with the moniker of "Bam Bam." (*Id*.) Investigators determined "through the use of departmental resources" that Bannick was also a member of the Public Enemy Number 1 gang and likewise had an extensive criminal history. (*Id*.) Investigators further determined that Bannick was on active probation and had provided the target cell phone number (310-261-1091) to his probation officer on March 1, 2022. (*Id*.)

1    On March 18, 2022, Pomona Police Department Detective David Estrada authored a
search warrant affidavit citing the above information in support of his request to obtain a range of information from the target cell phone number. (Doc. 1450, Ex. 1, at 5) Los Angeles Superior Court Judge Rubiya Nur approved the warrant later that day. (*Id*. at 3.)

According to the Defense, a Pomona Police Department Supplemental Report authored by Detective Michael Rodriguez and dated July 22, 2022, indicates that Mr. Bannick was arrested by the Los Angeles County Sheriff's Department on May 13, 2022 on an unrelated outstanding warrant. (*See* Doc. 1451 at 4.) While Mr. Bannick was incarcerated at the Men's Central Jail on that unrelated matter, Detective Rodriguez authored a search warrant, dated May 26, 2022, to seize a cell phone from Mr. Bannick's property. (*Id*.) Detectives Rodriguez and Estrada retrieved the phone from property custodians on May 27, 2022. (*Id*.) According to the Defense motion, despite multiple requests, the government has failed to produce the search warrant or any results from the seized phone.

In its opposition filed December 13, 2024, the government indicates that the May 26, 2022 warrant was recently provided to the Defense and that the results of the cell phone extraction were produced in June 2023 at BASH_17786 through 17799. (Doc. 1538.)

**III.   ANALYSIS**

**A.   Motion to Suppress Results of March 18, 2022 Search Warrant (Doc. 1540)**

The Fourth Amendment states, "(t)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A "search" occurs for purposes of the Fourth Amendment if the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects. *Florida v. Jardines*, 569 U.S. 1, 5 (2013). A judge may issue a search warrant if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002) (probable cause requires only a fair probability or substantial chance of criminal activity). "Under the totality of the circumstances test, otherwise innocent behavior may be indicative of

3

1  criminality when viewed in context." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th
2  Cir. 2002). A reviewing court does not conduct a de novo review of the sufficiency of the affidavit
3  and must accord great deference to another jurist's finding of probable cause. *Illinois v. Gates*, 462
4  U.S. 213, 236 (1983). "[C]ourts should not invalidate [a] warrant by interpreting [an] affidavit in a
5  hypertechnical, rather than a commonsense, manner." *Id*. (cleaned up).

6      Mr. Bannick argues that because the affidavit for the search warrant failed to provide any basis for the court to determine whether the information provided by the Crime Stoppers tip was reliable, the search warrant fails for lack of probable cause. It is well established that an uncorroborated anonymous tip is insufficient to establish probable cause. *See Hopkins v. City of Sierra Vista, Ariz.*, 931 F.2d 524, 528 (9th Cir. 1991). A wide range of corroboration can be considered when evaluating probable cause under the totality of the circumstances. *See Illinois*, 462 U.S. at 231–46.

13      As the warrant affidavit indicates, the anonymous tipster indicated that a white male by the name of Brandon Bannick, with the nickname "Bam Bam," was involved in the murder of Yagle and Ennis. (*See* Doc. 1450-1 at 4.) The warrant affidavit disclosed several pieces of corroborating information. First, Detective Estrada's search of law enforcement databases confirmed that a Brandon Bannick was a documented member of Public Enemy Number 1, a white supremacist gang, thereby corroborating both Bannick's full name and (at least impliedly because of the nature of that gang) his race, as provided by the tipster. The affidavit also explained that investigators learned through independent sources that both victims were also documented Public Enemy Number 1 members. (*Id*.) This independent information confirmed that Bannick had reason to know the victims.[1]

---

[1] The warrant affidavit indicated that investigators also learned that Bannick, Yagle, and Ennis had extensive criminal histories. (Doc. 1450-1 at 4.) The government argues in a footnote that Bannick's criminal history provided additional cause to believe that his telephone would be a reasonable place to search for evidence of the murders, "especially because that history includes prior serious felonies, including firearms crimes." (Doc. 1536 at 5 n.1.) Criminal history information "can be helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover." *United States v. Nora*, 765 F.3d 1049, 1059 (9th Cir. 2014) (internal citation and quotation omitted). However, the warrant affidavit at issue here did not disclose the nature of Bannick's prior criminal history, other than to describe it as "extensive." (Doc. 1450-1 at 2.) The government also argues that the fact that all three had extensive criminal histories suggests they were "engaged in gang activity or criminal activity together." (Doc. 1536 at 6.) That may be so, but it is unclear how this relates to the allegation by the anonymous tipster that Bannick murdered Yagle and Ennis.

4

The government also argues that other circumstances surrounding the anonymous tip render it "reliable." "[R]eliability is the hallmark of probable cause and reasonable suspicion." *See United States v. Ruiz*, No. CR20-5002 BHS, 2020 WL 1182954, at *6 (W.D. Wash. Mar. 12, 2020) (citing *Illinois*, 462 U.S. 213). The government argues the tip about Bannick's involvement in the Pomona homicides should be considered reliable because (1) it came in only a few days after the murders and (2) the circumstances of the murders—a double homicide that took place in an isolated location—meant that very few people possessed information about it. (Doc. 1536 at 5.)

This argument assumes facts not before this Court or before the judge who approved the warrant, namely whether information about the murders was publicly available at the time the tip came in. Moreover, the government does not cite any caselaw to suggest that a tip provided several days later is sufficiently contemporaneous to demonstrate any degree of reliability. In some circumstances, "statements about an event [ ] made soon after perceiving that event are especially trustworthy" because "substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." *Navarette v. California*, 572 U.S. 393, 400 (2014). But this line of authority appears to be isolated to situations where the caller reported a crime to law enforcement immediately after its occurrence. *See, e.g., id*. (finding reliable a report provided by a woman who called 911 claiming to have been run off the road by another vehicle, which was spotted 19 miles down the road only 18 minutes after the 911 call). Finally, the government does not engage in the standard "reliability" analysis applied to informant information. Courts in this Circuit consider several factors to determine whether an informant's tip is sufficiently reliable to support probable cause:

> First, a known informant's tip is thought to be more reliable than an anonymous informant's tip . . . Second, an informant with a proven track record of reliability is considered more reliable than an unproven informant. Third, the informant's tip is considered more reliable if the informant reveals the basis of knowledge of the tip—how the informant came to know the information. Finally, a tip that provides detailed predictive information about future events that is corroborated by police observation may be considered reliable, even if the tip comes from an anonymous source.

*United States v. Rowland*, 464 F.3d 899, 907–08 (9th Cir. 2006). None of these factors support a

finding that the anonymous tip in this case is independently reliable. The informant is unknown and therefore has no track record; there is no suggestion the informant disclosed the basis for their information; and the tip did not predict any future event that could be corroborated. Therefore, under these factors, the anonymous tip "falls towards the low end of the reliability scale when viewed alone, out of context." *United States v. Floyd*, 76 F. Supp. 3d 976, 982 (N.D. Cal. 2014).

"[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *See Alabama v. White*, 496 U.S. 325, 330 (1990). Here, there is at least some information corroborating the anonymous tip, including independent law enforcement information establishing that Mr. Bannick and the victims were members of the same gang and therefore had a connection to each other.

Even assuming this corroboration is insufficient to establish probable cause, the government argues that the Court should decline to apply the exclusionary rule because the investigating officers relied in good faith on an objectively reasonable warrant. (Doc. 1536 at 7); *see United States v. Leon*, 468 U.S. 897, 922 (1984) (suppression not appropriate where evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant). "The good faith exception will save a search based on a defective warrant unless no reasonable police officer could have believed there was probable cause to search the location identified in the search warrant." *United States v. Chavez-Miranda*, 306 F.3d 973, 980 n.3 (9th Cir. 2002) (quoting *United States v. Tate*, 795 F.2d 1487, 1491 (9th Cir. 1986)). "The exception doesn't apply, conversely, if the officers' conduct showed 'deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'" *United States v. King*, 985 F. 3d 702, 710 (9th Cir. 2021) (internal citations and quotations omitted). "The central question is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* (quoting *Leon*, 468 U.S. at 922 n. 23). To overcome the presumption of good faith reliance, the defense would have to establish that at least one of four enumerated exceptions apply: (1) the affiant knowingly or recklessly misled the judge with false information; (2) the judge wholly abandoned his or her neutral role; (3) the affidavit was so lacking in indicia of

1   probable cause that official belief in its existence was objectively unreasonable; or (4) the warrant
2   was so facially deficient that executing officers could not reasonably presume it to be valid.
3   *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006).

4   None of these exceptions appear to apply to the March 18, 2022, warrant. There is no
5   suggestion of any misrepresentation in the affidavit; no indication that the approving judge
6   abandoned her neutral role; and, as discussed above, the affiant provided at least some
7   corroboration of the anonymous tip, making it difficult to conclude that the warrant was so
8   lacking in indicia of probable cause to render it facially deficient or reliance on it objectively
9   unreasonable. Thus, the motion to suppress the evidence gathered as a result of the March 18,
10  2022 warrant is **DENIED**.

11  **B.        Motion to Suppress Results of May 26, 2022 Search Warrant (Doc. 1451)**

12  Mr. Bannick next seeks to suppress any data obtained from the same phone, which was
13  seized from his property located at the Men's Central Jail because the government has failed to
14  produce a signed search warrant authorizing the seizure of the phone and/or an examination of its
15  contents. (Doc. 1451.)

16  As mentioned, the government indicated in its brief that it recently produced the warrant
17  authorizing that search and previously (in June 2023) produced the resulting cell phone extraction
18  at BASH_17786 through 17799. (Doc. 1538 at 2.) At oral argument, the government confirmed
19  that the warrant was disclosed on November 19, 2024, several weeks before the relevant motion-
20  filing deadline. The Defense does not suggest a willful discovery violation occurred, only that
21  absent a warrant supported by probable cause, the seizure is unlawful. (Doc. 1451 at 4.) Given
22  that the warrant was produced prior to the motion deadline and the resulting product of the
23  warrant was produced in 2023, the motion is **DENIED** to the extent it seeks suppression on these
24  grounds.

25  To the extent the Defense motion can also be construed as arguing that the May 26, 2022
26  warrant lacks probable cause, the motion is denied. The affidavit supporting the warrant builds
27  upon the one authored in connection with the March 18, 2022 warrant and contains additional
28  details, including that the results of the March 18 warrant of Bannick's phone number "place

[Bannick] in the direct area of the victim's residence a few hours prior to the murder of both victims." (Doc. 1538-1 at 3.) Because investigators reasonably relied on the March 18, 2022 warrant affidavit, they likewise reasonably relied on the May 26, 2022 affidavit, which contains additional corroborating details connecting Bannick to the murders. Thus, the motion to suppress the cell phone extraction authorized by the May 26, 2022 warrant is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, the motions to suppress (Docs. 1450, 1451) are **DENIED**.

IT IS SO ORDERED.

Dated:  **January 7, 2025**

_____
UNITED STATES DISTRICT JUDGE